## White v. Commonwealth.

(Decided October 2, 1925.)

## Appeal from Breathitt Circuit Court.

Homicide—Instruction that, for Son to Plead Defense of Mother, it Must be Shown that Father was at Fault in Trouble, was Erroneous, where no Evidence on which to Base it.—In a prosecution of son for killing father, qualification of self-defense instruction that for son to avail himself of plea that he acted in defense of his mother, it must be shown that father was at fault and aggressor in trouble between deceased and his wife, was erroneous, where there was no semblance of evidence on which to base such qualification.

G. B. STAMPER for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant was indicted, charged with the murder of his father, John White, and upon his trial was found guilty of manslaughter and sentenced to imprisonment for twenty years and one day. He was twenty years of age and his father was 50 or more at the time of the homicide.

John White was the owner of a farm in a remote section of Breathitt county, where he and his wife and their four unmarried children, including appellant, lived. For some time immediately previous to the homicide the father and son had each been at work on a railroad section near their home, and so far as the record discloses there had never at any time been any bad feeling or difficulty of any character between them. On the contrary, the evidence discloses that on the night of the homicide the boy had shown special solicitude for the welfare of his father, and had offered to go with and accompany him to the house of a neighbor, some distance away, where he had expressed his purpose to go, the boy fearing for his father's safety in his then drunken condition.

The decedent was a large, powerful man, and for a number of years had been habitually addicted to the excessive use of liquor, being under its influence a large part of the time. The evidence convincingly shows that when under the influence of liquor he was quarrelsome,

vicious and brutal, and particularly with reference to members of his family, and his wife more than the others. It shows that on several occasions within a few years he had, even in public places, struck, beaten and kicked her, and that upon more occasions than one she had been compelled to temporarily leave her home for fear of personal violence from him.

Some time before the homicide John White had contracted to sell his farm, which was the home of his wife and family, but when the time came to make the deed to the purchaser his wife had refused to sign the conveyance for the reason that she did not care to deprive herself and her infant children of a home. This action of hers enraged him very much, and there had been several violent scenes growing out of her determination. He seemed to have been very determined in his purpose to sell the place and get the money, and when he would get drunk her refusal was the cause of recurring family quarrels. Upon more than one occasion he had threatened to kill her, and on the very afternoon before the homicide he said to a neighbor, in substance, that he was going home and clean up the ranch and then leave; and in accord with his threat or prophesy he actually did at supper time that night throw all the dishes from the table and smash them, and was otherwise so violent as to drive his wife, in fear, from her home, to which she did not return until after he had gone out into the night.

After the supper time episode he went across the river, where he met some congenial friends and remained for several hours; and while it is not disclosed by the evidence that he was drinking during that period, it is shown that between ten and eleven o'clock, when he started home, he was still under the influence of liquor. Appellant had also gone some distance from home that night, and upon his return came by the place where his father and companions were, and when they left there the two left together and went home together, and there is no suggestion by any witness in the case that father and son were not at the time on excellent terms.

The entrance to the White home was into the family room where the decedent and his wife and the younger children slept, while the room to the left of the entrance, and adjoining the family room, was where appellant slept. Appellant entered the door first and passed through the family room into his own, and shortly thereafter heard a disturbance in the family room, and in a

little while his mother screamed to him to come to her, that she was about to be killed. His evidence is that when he opened the door between the two rooms his mother's prostrate form was on the floor, and his father stood over her with an uplifted chair in the act of striking her with it, when he, with his automatic pistol, as quickly as he could, fired four shots which killed his father.

The mother's evidence is that after the son passed into his room decedent came to the bed where she was and struck her in the face, and finally took hold of her hair with one hand and her arm with the other and jerked her out on the floor, and had the chair uplifted with which to strike her when she screamed for her son.

The three children who were asleep in the room apparently were not awakened until the pistol shots were fired, for none of them were introduced as witnesses.

The only effort to contradict any material statement of either of these two eye-witnesses is the evidence of some two or three of their relatives who came to the place some time later, after having been sent for by appellant, who state that when they got there there was no chair in the room where the killing occurred.

The whole evidence shows that decedent was a violent, brutal and vicious man when drinking, and that upon the night in question he was under the influence of whiskey; while the evidence is convincing that appellant was duly sober and rarely indulged in the use of liquor; although one witness for the Commonwealth, a niece of the dead man, states that he was drinking when she reached the place that night after the homicide.

It is urgently insisted that all the evidence shows appellant's mother was in imminent danger of either death or great bodily harm at the time he shot his father, and that there was no other action he could have taken at the time and under the circumstances to prevent such death or injury, and that therefore the verdict is not only flagrantly against the evidence but that in fact there is none to the contrary, and that his motion for a directed verdict of not guilty should have been sustained. As, however, there will be another trial of this case for the reason hereinafter given, and the evidence may then be different, we decline to now pass upon that question, but expressly leave the same open for further action.

Our examination of the instructions discloses but one error in them, and because of that error the judgment must be reversed.

The self-defense instruction is carefully and accurately drawn, but there is appended to it a qualification which is wholly unauthorized by the evidence. That qualification is this:

"For the defendant to avail himself of the plea of defense of his mother it must appear to the jury from the evidence that John White was at fault and the aggressor in the trouble, if any, between defendant's mother and the said John White."

There is no semblance of evidence upon which to base this qualification. The evidence is that when John White and his son returned to the home John White's wife was in bed, and that he pulled and jerked her out of bed, and was in the act of striking her with an uplifted chair when the son fired. There is no evidence even that there were any words of any kind passed between John White and his wife before he offered her violence, and the fact that she herself was at the time in bed is convincing that she had not offered to do him any violence, nor even engaged in a quarrel with him. The only semblance of reason for that qualification to the instruction is evidence by some witnesses that upon previous occasions she had engaged in quarrels with her husband, but even that evidence as to such occasions fails to show any attempted violence by her.

It is unnecessary to decide on this appeal whether, even if she had been the aggressor in the first place, the qualification would have been proper, where it appears the son came upon the scene at a time when she was actually or apparently in danger of her life or great physical harm.

At any rate, there was no evidence in this case upon which to base this qualification, and it was therefore erroneous. Martin v. Commonwealth, 93 Ky. 189; Allen v. Commonwealth, 86 Ky. 642.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.